IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH DIVISION

**COURTHOUSE NEWS SERVICE,**                   :    CASE NO. ___2:23___cv___1459___
30 N. Raymond, Third Floor                     :
Pasadena, CA  91103                            :    (Judge _____)
                                               :
               Plaintiff,                      :
                                               :    **COMPLAINT FOR**
v.                                             :    **DECLARATORY AND**
                                               :    **INJUNCTIVE RELIEF**
**MICHAEL MCGEEVER, in his official**          :
**capacity as Clerk of the Allegheny County**  :
**Court of Common Pleas,**                     :
Allegheny County Courthouse                    :
436 Grant St.                                  :
Pittsburgh, PA  44113                          :
                                               :
               Defendant.                      :

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff Courthouse News Service ("Courthouse News"), by and through its undersigned attorneys, alleges the following in support of its Complaint for Injunctive and Declaratory Relief against Defendant Michael McGeever ("Defendant"), in his official capacity as Clerk of the Allegheny County Court of Common Pleas ("ACCCP").

## INTRODUCTION

1.      Since time beyond memory, state and federal courts across the country have provided timely access to new, non-confidential, civil complaints ("new complaints"), which was when the clerk of court received the new filing.  Pennsylvania's federal and state courts shared in that tradition of timely on-receipt access.

2.      Traditional on-receipt access meant that the press and public could review new complaints when they were filed, when the paper filing crossed the intake counter in the clerk of court's office.  That tradition was perhaps best described by Eighth Circuit Judge Bobby Shepherd

in oral arguments in 2022 on a case involving the identical issues at issue here: "There was a time when – and some in this room may remember it – when you a pleading to the courthouse and the clerk stamped it physically and it went into different bins and it was available immediately."

3.      In the transition from paper filing to electronic filing ("e-filing"), the federal courts and many state courts kept the tradition of on-receipt access in place.  ACCCP did not.

4.      When Defendant first implemented e-filing at ACCCP, he continued to allow the press to review new complaints after intake but before they were fully docketed.  But as the voluntary e-filing system became more widely used, Defendant pushed press access behind docketing, now commonly called "processing," thereby failing to maintain the tradition of timely, on-receipt access.  He has since refused to reinstate it.

5.      The First Amendment to the United States Constitution provides the press and public with a qualified right of access to new complaints.  Once this qualified right of access attaches, any restriction of access is a restriction of the press's and public's First Amendment rights, unless constitutional scrutiny is satisfied.

6.      Whether new civil complaints are paper-filed or e-filed, this right of access attaches *on receipt*, which is when a new filing is delivered to, or deposited with, the clerk.  In other words, the press and public have a constitutional right to access new complaints when the clerk receives them.   Any delay in access thereafter that results from Defendant's processing policy is an unconstitutional restriction of the press's and public's First Amendment rights, unless the Defendant can show that such policy satisfies constitutional scrutiny.

7.      Courthouse News has a First Amendment right of access to new complaints filed with Defendant at ACCCP.  Such access is fundamental and essential to accurate and fair news reporting of civil court actions, and, thus, vital to the public's ability to monitor the activities of the

judicial branch of government. Any unjustifiable delays in access result in unconstitutional restrictions of the press's and public's performance of that important role.

8.    When a complaint is withheld, the news it contains grows stale. The public is left unaware that a civil action has commenced and has invoked the power of the judicial branch of government.

9.    Many state courts and most federal courts throughout the country provide the press and public with on-receipt access to newly e-filed complaints. E-Filing software can provide the virtual equivalent of the bin on the counter holding the new civil complaints.

10.    Defendant, however, enforces a policy of withholding access to newly received civil complaints until after processing is completed.

11.    Defendant has implemented a "no-access-before-process" policy that delays access to newly e-filed, non-confidential complaints. This policy is reflected in Rule 205.4(f)(1) of the Local Rules of the Civil and Family Division of the Court of Common Pleas of Allegheny County, Pennsylvania.

12.    Defendant is withholding access to newly e-filed complaints – effectively sealing them – in order to review the new case information entered into Defendant's e-filing system by the filer.

13.    These delays are unnecessary, as demonstrated by the federal and state courts across the country that provide access to new complaints on receipt and before processing. But for Defendant's no-access-before-process policy, there would be no delay. Defendant is capable of providing on-receipt access; he has just chosen not to.

14.    Since April 25, 2023, Courthouse News has attempted to correspond with Defendant in hopes of resolving these delays in access. However, timely on-receipt access is not

3

forthcoming, as Defendant rejected Courthouse News' request that Defendant stop enforcing his no-access-before-process policy that withholds access to new civil complaints until after processing, thereby resulting in continued and significant delays in access to new civil complaints e-filed at ACCCP.

15.     Courthouse News brings this action to end the pervasive and ongoing deprivations of the First Amendment right of access, seeking both declaratory and injunctive relief.

## JURISDICTION AND VENUE

16.     Courthouse News' claims arise under the First and Fourteenth Amendments to the U.S. Constitution and the Civil Rights Act, Title 42 U.S.C. §§ 1983, et seq.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 (federal question), 1343 (civil rights), and 2201 (declaratory relief).  Defendant is subject to personal jurisdiction in this District.

17.     Venue is appropriate in this district under 28 U.S.C. § 1391(b) and (c) because a substantial part of the events or omissions giving rise to Courthouse News' claims occurred in this district, specifically at ACCCP, and because Defendant is a public official who is employed in, performs his duties in, and resides in Allegheny County, Pennsylvania.

## THE PARTIES

18.     Courthouse News is a nationwide news service that was founded almost 30 years ago out of a belief that a great deal of civil litigation news went unreported by traditional news media.  Courthouse News has over 2,200 subscribers nationwide and approximately 240 employees. Most of its employees are editors and reporters responsible for covering trial and appellate courts at the state and federal level in all 50 U.S. states.

19.     Defendant Michael McGeever, as the Clerk of Courts for ACCCP, is being sued in his official capacity as the Clerk.   The Clerk is responsible for, among other things, the administration of court records at ACCCP.

20.     Defendant is sued in his official capacity only.  Courthouse News seeks relief against Defendant as well as his agents, assistants, successors, employees, and all persons acting in concert or cooperation with him or at his direction or under his control.

21.     Defendant and the clerks acting under his direction and supervision are directly involved with and/or responsible for the delayed access to new complaints experienced by Courthouse News and other members of the press.  Such acts reflect the official policy and practice of Defendant's office and ACCCP as a whole.

22.     Defendant's actions, as alleged in this Complaint, are under the color of Pennsylvania law and constitute state action for purposes of the Fourteenth Amendment to the U.S. Constitution and 42 U.S.C. § 1983.

## FACTUAL ALLEGATIONS

23.     On April 25, 2023, Courthouse News sent a letter to Defendant to request timely, pre-processing access to new non-confidential civil complaints. In this letter, Courthouse News explained how e-filing systems can be configured to solve delays in access caused by Defendant's policy of processing complaints before providing access.

24.     As of the filing of this Complaint.  Defendant has not responded to the April 25, 2023 letter.

### *Courthouse News' Reporting Activities*

25.     Courthouse News publishes a variety of news publications, including its "New Litigation Reports," which contain original, staff-written summaries of significant new civil

complaints.  In Pennsylvania, Courthouse News publishes four *New Litigation Reports*: the *Pittsburgh Report*, the *Delaware Valley Report*, the *Philadelphia State Report* and the *Philadelphia Federal Report*.  The *Pittsburgh Report* provides coverage of new litigation throughout roughly the central third of Pennsylvania, which includes Allegheny County.

26.     *New Litigation Reports* do not cover criminal or family law matters, nor do they include residential foreclosures or probate filings.  Moreover, CNS does not seek to review or report on the small number of newly filed civil complaints that are statutorily confidential or accompanied by a motion to seal.

27.     Courthouse News also publishes the *Daily Brief*, which covers published appellate rulings in state and federal courts, including the appellate courts in Pennsylvania, the U.S. Supreme Court and federal circuit courts, as well as significant rulings from the federal district courts. Courthouse News also publishes a freely available website, www.courthousenews.com, featuring news reports and commentary, which is read by roughly 30,000 people every weekday.  The website functions much like a print daily newspaper, featuring staff-written articles from across the nation that are posted throughout each day, and rotated on and off the page on a 24-hour news cycle.

28.     Courthouse News has been credited as the original source of reporting on various topics by a wide range of publications, including:  *ABA Journal*, *ABC News*, *The Atlantic*, *Austin American Statesman*, Black Christian News Network, *California Bar Journal*, CBS News, *The Dallas Morning News*, Fox News, *Houston Chronicle*, *Los Angeles Times*, National Public Radio; NBC News, *The New York Times*, Politico, *Rolling Stone*, *Salt Lake City Tribune*, *The Wall Street Journal*, *The Washington Post*, *USA Today*, *U.S. News and World Report*.

29.     Courthouse News has more than 2,300 subscribers nationwide, including law firms, law schools, government offices and other news and publishing outlets such as:  The Associated Press, *Austin American-Statesman, The Atlanta Journal Constitution*, *The Boston Globe*, CNN, *The Dallas Morning News*, *Detroit Free Press*, *Honolulu Civil Beat*, *Las Vegas Review Journal*, *Los Angeles Times*, *Portland Business Journal*, *St. Paul Business Journal*, *The Salt Lake Tribune*, *The San Jose Mercury News*, *Tampa Bay Business Journal*, Variety, Walt Disney Company and Warner Bros.

30.     Academic subscribers include Neumann University, Seton Hall University, Southern Illinois University School of Law, Stanford University, UCLA School of Law, University of Chicago, University of Maryland, University of North Carolina at Chapel Hill, University of Pittsburgh, University of Virginia School of Law and Wake Forest University.

31.     In Pennsylvania and other states, the *New Litigation Reports* cover civil complaints, focusing on those against business institutions and public entities.  Courthouse News reporters do not cover family law matters, name changes, probate filings, most mortgage foreclosures, or collection actions against individuals, unless the individual is famous or notorious.

32.     Courthouse News covers the larger Pennsylvania state courts, like ACCCP, daily and emails reports to its subscribers nightly.

33.     To prepare the *New Litigation Reports* and identify new cases that may warrant a website article, Courthouse News' reporters review new non-confidential civil complaints filed with the court that day.  Courthouse News does not seek to review or report on the fraction of new civil complaints that are confidential or filed under seal.

34.     Given the nature of news coverage and the Courthouse News publications, any delay in the ability of a reporter to obtain and review new complaints necessarily impedes the reporting on factual and legal controversies for subscribers and readers.

***The Evolution of Filing Procedures & a Tradition of Access to Civil Complaints***

35.     In the paper era, both state and federal courts around the country gave the press timely access to new complaints on receipt, which was right after the complaints crossed the intake counter in the clerk's office and were received.

36.     Courthouse News began its coverage of new civil complaints, trials, and rulings in 1990.  It initially focused on the U.S. District Court for the Central District of California, where Courthouse News reporters and other journalists could look through stacks of complaints that had just arrived at the clerk's office.

37.     As Courthouse News expanded to large courts throughout the United States, its reporters found a common tradition. In those courts, Courthouse News arrived to find existing procedures under which the clerks were providing the press corps with access to new civil complaints when they were received.

38.     As Courthouse News continued to grow, its coverage extended to state and federal courts in every region of the United States, starting with major metropolitan areas, then gradually into less populous areas.  Courthouse News now has reporters and editors covering state and federal trial and appellate courts across all 50 states.  In every corner of the country Courthouse News turned, courts had existing procedures in place that provided the press with access to newly filed paper complaints when they were received.

39.     ACCCP began a voluntary e-filing program in 2000. In the beginning, only a handful of complaints trickled in through the e-filing system each day.  But by 2005, when CNS began coverage of the court, about 25% of new civil filings were submitted electronically.

40.     Both e-filed documents and paper-filed documents were assigned a case number and entered into a basic intake log that was available for viewing on the court's website upon receipt. E-filed complaints were then printed out and put into the same stream as paper filings, where they were docketed, put into folders and placed on a shelf.

41.     When CNS began covering ACCCP in 2005, the reporter would review the public intake log online or at public computer terminals in the prothonotary's office to determine which complaints he wanted to request. The prothonotary then allowed the reporter to request those specific complaints from the paper desk, which would track the complaints down at whatever stage of the docketing process they were in and provide them to the reporter for viewing.

42.     This method of access – viewing an intake log and requesting and receiving specific complaints prior to the completion of docketing – had been in place for the Pittsburgh Post-Gazette for as long as it had a reporter visiting the courthouse daily, and was common in courthouses around the country.

***Delays in Access to E-Filed Civil Complaints at ACCCP***

43.     As e-filing became more universally used at ACCCP, e-filed documents stopped getting printed out and paper-filed complaints had to be scanned into electronic form, so the prothonotary's office stopped fulfilling the CNS reporter's request for paper copies of individual complaints, and the press was pushed to the end of the line, behind processing.

44.     Today, nearly all federal district courts and many state courts provide access to newly e-filed complaints on receipt and before processing.

45.     When using ACCCP's e-filing system, a document is submitted when the filer clicks the "Submit Payment" button, which appears immediately after the "Filing Review" page.  When the filer clicks the "Submit Payment" button, the document has been submitted to and received by the Defendant.  Therefore, an action is "filed" when the new complaint is submitted to and received by the clerk—not after it is processed.

46.     Defendant is capable of providing on-receipt access to new complaints, yet he does not. Instead, Defendant has adopted and implemented an e-filing policy that pushes access behind processing.

47.     Defendant's no-access-before-process policy requires that all new complaints (and all other e-filings) be withheld until after Defendant's staff members have completed their clerical tasks involved with processing such complaints.  As a direct result, Courthouse News, along with other members of the press and the public, consistently experience access blackouts at ACCCP with the result that roughly three quarters of the new civil actions are withheld for one to three days, while the news they contain becomes "old news."

48.     Prior to restricting press and public access to court documents, a judge – not a clerk of courts – must "state findings or conclusions which justify nondisclosure to the public."  *See Brown & Williamson Tobacco Corp. v. F.T.C.*, 710 F.2d 1165, 1176 (6th Cir. 1983).

49.     Defendant is not permitted to make judicial decisions, rulings, or findings and is, therefore, not capable of making new complaints confidential, or sealing them.  By withholding access to the new complaints, Defendant is sealing those documents from public viewing without prior court order.

50.     Rule 205.4(a)(1)(B)(3) requires that documents to be filed under seal be filed conventionally.  In other words, a filer who wishes to seal or make confidential certain documents

must file them the old-fashioned way – via paper filing over the intake counter in Defendant's office at ACCCP.  Thus, Defendant already has mechanisms in place to protect confidential filings from public viewing as they await court order sealing the documents.

51.     Furthermore, when filing a complaint through ACCCP's e-filing system, filers are required to designate whether a document is confidential and are also required acknowledge the clerk's policy that documents containing any confidential information will not be accepted. Instead, they are required to submit a separate "Confidential Information Form" along with a redacted version of the confidential document.

52.     With Defendant's no-access-before-process policy restricting access to all e-filings and the Local Rule's conventional filing requirements for sealing confidential documents, it necessarily follows that newly e-filed, ***non-confidential***, civil complaints are withheld from press and public access without a motion by the filing party, without prior court order, and without sufficient justification to satisfy constitutional scrutiny.

53.     Processing takes time.  And Defendant's no-access-before-process policy relegates new e-filed complaints to sit in a database, where they await a clerk to process them.  All the while, time continues to quickly pass by.  As a result, new court matters are restricted from press and public access until after their news value has diminished.

54.     Because Defendant already has mechanisms in place to protect confidential filings from public viewing, Defendant's no-access-before-process policy unjustifiably restricts Courthouse News' First Amendment right of access to new non-confidential complaints in such a way that it cannot survive constitutional scrutiny.

55.     Moreover, Defendant is capable of providing on-receipt access to new complaints immediately after they are received by Defendant.

56.     By all appearances, defendant operates ACCCP's e-filing system in-house with consultation from an outside software vendor. Regardless of who provides the software, all e-filing systems, including ACCCP's, share common characteristics. Before the filer can electronically submit a complaint to a clerk of court, the filer must enter basic case information, including court and case type, and complete any other submission requirements the court specifies.  Accordingly, ACCCP's e-filing portal, as with most e-filing software systems, can filter public complaints into a queue that provides access at the time of receipt and corresponds to traditional access for paper complaints.   There is, thus, no reason that new complaints need to be withheld from public view while they sit in a database waiting for a clerk to complete the post-filing "clerk review" and "acceptance" process.

*Qualified First Amendment Right of Access Attaches to New Civil Complaints*

57.     A qualified First Amendment right of access claim involves a two-part test:  (1) whether a right of access attaches, and (2) if the right attaches, whether suppression of that right serves an overriding interest and is narrowly tailored.   *See U.S. v. Wecht*, 537 F. 3d 222, 233-34 (3d Cir. 2008); *see Whiteland Woods, L.P. v. Township of W. Whiteland,* 193 F. 3d 177, 181 (3d Cir. 1991)*; Press-Enterprise Co. v. Superior Court*, 478 U.S. 1 (1986) (*"Press Enterprise II"*).

58.     The Free Speech and Free Press Clauses of the First Amendment to the United States Constitution create a qualified right of public access where (1) the information sought has "historically been open to the public," and (2) "public access plays a significant positive role" in the functioning of the particular process in question. *See Press-Enterprise II*, 478 U.S. 1; *see also Wecht,* 537 F. 3d at 234. A right of access "is implicit in the guarantees of the First Amendment[.]" *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 580, 100 S. Ct. 2814, 2829, 65 L. Ed. 2d 973 (1980). It is also "well established that the public and the press have a 'qualified First

Amendment right to attend judicial proceedings and to access certain judicial documents.'" *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 120 (2d Cir. 2006) (citing *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 91 (2d Cir.2004)); *see also Whiteland Woods,* 193 F. 3d at 181 (In the context of judicial proceedings, we have identified six factors pertinent to the application of the second prong: "[1] promotion of informed discussion of governmental affairs by providing the public with the more complete understanding of the judicial system; [2] promotion of the public perception of fairness which can be achieved only by permitting full public view of the proceedings; [3] providing a significant community therapeutic value as an outlet for community concern, hostility and emotion; [4] serving as a check on corrupt practices by exposing the judicial process to public scrutiny; [5] enhancement of the performance of all involved; and[6] discouragement of perjury.")

59.     The resolution of private disputes frequently involves issues and remedies affecting third parties or the general public.  The community catharsis, which can only occur if the public can watch and participate, is also necessary in civil cases. Civil cases frequently involve issues crucial to the public—for example, discrimination, voting rights, antitrust issues, government regulation, bankruptcy, etc.

60.     Historically, "courts have openly provided the press and general public with access to civil complaints." *Bernstein v. Bernstein Litowitz Berger & Grossman LLP*, 814 F.3d 132, 141 (2d Cir. 2016); *Courthouse News Serv. v. Planet*, 947 F.3d 581, 596 (9th Cir. 2020) ("*Planet III*").

61.     New complaints are a traditional source of news, providing the first piece of information about legal battles, therefore, serving as a "significant positive role" in our legal system.  The right to review new civil complaints "is an indispensable predicate to free expression about the workings of government." *Courthouse News Serv. v. Planet*, 750 F.3d 776, 785, 787 (9th

Cir. 2014) ("*Planet I*"); *accord Courthouse News Service v. Schaefer*, 2 F.4th 318, 326 (4th Cir. 2021) (citing *Press-Enterprise II*, 478 U.S. at 8-10); *Courthouse News Serv. v. Gabel*, No. 2:21-CV-000132, 2021 WL 5416650, at *9 (D. Vt. Nov. 19, 2021) (recognizing "the need for federal courts to have a measure of accountability and for the public to have confidence in the administration of justice") (appeal filed) (citations omitted) (internal quotation marks omitted); *Courthouse News Serv. v. New Mexico Admin. Off. of the Cts.*, No. CIV 21-0710 JB/LF, 2021 WL 4710644, at *31 (D.N.M. Oct. 8, 2021) (quoting *Globe Newspaper Co. v. Superior Ct. for Norfolk Cty.*, 457 U.S. 596, 606, 102 S. Ct. 2613, 2619, 73 L. Ed. 2d 248 (1982)) (recognizing that public access "plays a particularly significant role in the functioning of the judicial process and the government as a whole.")

62.     When the clerk receives a complaint, the public is entitled to know who has invoked the judicial branch's jurisdiction and authority and to what end.  When the clerk withholds a new complaint, even temporarily, the public has no way of knowing that a new civil case was initiated. Even if the public learns of the case directly from the named parties or through docket information, without access to the complaint itself, there is no other more reliable and accurate means to ascertain the factual and legal claims in the new civil action.  By inserting Defendant's staff members before the press's and public's direct access to the information in newly filed complaints, Defendant is inviting room for error.[1]

**Defendant's No-Access-Before-Process Policy Cannot Survive Constitutional Scrutiny.**

63.     Because the qualified First Amendment right of access attaches to new complaints on receipt, a presumption of openness arises at that time.

---

[1] The Gabel Court notes that "there would be no delay in an e-filing system" because the "efilers are filing with all of the document information they need, and it's hitting the docket, and there isn't any step in between there by staff." No. 2:21-CV-000132, 2021 WL 5416650, at *9.

64.     Any delays in access due to Defendant's no-access-before-process policy must serve an overriding interest based on findings that "closure is essential to preserve higher values and is narrowly tailored to serve those interests." *Ashcroft*, 303 F.3d at 709 (citing *Press-Enterprise II*, 478 U.S. at 13); *accord Shane Grp., Inc. v. Blue Cross Blue Shield of Michigan*, 825 F.3d 299, 305 (6th Cir. 2016) (citing as an example *Press-Enterprise Co. v. Sup. Ct.*, 464 U.S. 501 (1984) ("*Press-Enterprise I*")); *Planet III*, 947 F.3d at 596; *Bernstein*, 814 F.3d at 144; *Schaefer*, 440 F. Supp. 3d at 559-60; *U.S. v. Simone*, 14 F. 3d 833, 840 (3d Cir. 1994).

65.     Defendant has adopted and implemented the no-access-before-process policy outlined in ACCCP's Local Rules.  The practice attempts to distinguish between "submitted" and "accepted" documents by placing an ambiguous hold of undetermined time between intake and processing, during which time Defendant's staff conducts a "review of electronically submitted documents[.]" *Id.*

66.     Regardless of how Defendant chooses to label or classify an e-filed complaint, the qualified First Amendment right of access attaches on-receipt – when the new complaint is submitted to and received by Defendant. Any delay thereafter is subject to constitutional scrutiny.

67.     Courthouse News only seeks to publish truthful information.  The New Litigation Reports publish a list of new civil complaints filed each day in certain courthouses.  The new complaints listed in these Reports represent truthful information reported by Courthouse News – a complaint ***was submitted*** by a filer and ***was received*** by a clerk of courts.  Even if the complaint is later rejected by the clerk, for whatever reason, the fact that the complaint was submitted and received for filing remains accurate.  By reporting a truthful event in real time, there is no danger, therefore, that Courthouse News will publish "inaccurate information."

68.     Moreover, news reports about complaints benefit from the news reporter's ability to read the filed complaint, rather than relying on a press release.

69.     ACCCP's E-Filing Order and Defendant's practice do not advance an overriding interest and are not narrowly tailored to serve the government interest and do not override Courthouse News' qualified First Amendment right of access.

70.     Defendant's no-access-before-process policy – which prohibits access to *all* electronically submitted documents until after Defendant's clerical review process is complete – is the sort of "blanket prohibition on the disclosure of records" that "implicates the First Amendment." *Globe Newspaper Co. v. Pokaski*, 868 F.2d 497, 505 (1st Cir. 1989). "A ban on reporting news just at the time the audience would be most receptive would be effectively equivalent to a deliberate statutory scheme of censorship." *Planet III*, 947 F.3d at 594.

71.     The responsibility for including accurate information in filings, or omitting sensitive information, rests solely with the filer.  *See* Section 7.0(D), Case Records Public Access Policy of the Unified Judicial System of Pennsylvania.

72.     The vast majority of federal courts, including the U.S. District Courts for the Eastern and Western Districts of Pennsylvania, and many state courts have configured their e-filing systems to provide press and public access at the time of receipt. They use different forms of software and different methods for providing access. But they share a common result: press or press and public access to new public civil complaints when the court receives them.

73.     The courts providing access at the time of receipt or within a few minutes thereafter include almost all federal courts, including this Court, and state courts in Alabama, Arizona, California (all efiling courts covering most of the state), Connecticut, Florida, Georgia (courts in

and around Atlanta), Hawaii, Nevada (Las Vegas), New York, Ohio (Columbus), Texas (Austin), Utah, Vermont and Washington (Tacoma).

74.    Secure access is provided in federal courts, through free public terminals at the courthouse and through PACER registration online which requires a password and payment. State courts provide on-receipt access through that same basic combination of free public terminals at the courthouse online access controlled through registration, username and password and payment of a fee. Some state courts require only registration for online access and a few, such as the New York state courts, require neither registration nor fee.

75.    E-filing systems are configured to require the filer, including those filing into ACCCP, to follow a step-by-step e-filing process that includes designating the nature and type of case and that allows for sorting public case types into a press or public review queue.  Instead of sitting in a stack of paper filings in the clerk's office, new complaints now sit in an electronic database, where they can be timely retrieved and reviewed on-receipt by members of the media – unless clerks withhold them for processing.

76.    Defendant operates its own e-filing system, so it can configure the software to allow on-receipt access to new filings through either a "press queue," where newly filed complaints are available to the press in read-only format prior to case assignment or acceptance, or an "auto-accept" system, which automatically assigns a permanent case number to new complaints and automatically places them into the docket, or case management system, where they can be viewed by the public on receipt.

77.    This court and a handful of other federal district courts, as well as state courts in New York, California, Florida, Texas, Georgia, Nevada, and Vermont, provide on-receipt access through a review queue, while the majority of federal courts around the country, including the U.S.

District Court for the Eastern District of Pennsylvania, as well as state courts in Connecticut, Alabama, Hawaii, Nevada and Washington, have auto-accept systems in place.

78.     Defendant's no-access-before-process policy results in unnecessary and easily avoidable delays in access at ACCCP.  Defendant is capable of providing the press and public with on-receipt access to new complaints shortly after they are received by Defendant through ACCCP's e-filing system.  Thus, Defendant's policy is not narrowly tailored.

79.     Defendant cannot maintain his no-access-before-process policy in the face of easily available alternatives without violating Courthouse News' qualified First Amendment right of access.

80.     Despite Courthouse News' attempts to correspond with Defendant and explain how other courts throughout the country provide on-receipt access before processing, Defendant continues to impose her no-access-before-process policy, thereby restricting Courthouse News' qualified First Amendment right of access to new complaints.

81.     Injunctive relief will not require this Court's ongoing enforcement or any "major continuing intrusion… into the daily conduct of state proceedings," as has been demonstrated by the Vermont state court administrator in *Gabel* and the New York county clerk in *Tingling* after injunctive orders required them to cease enforcing their no-access-before-process policies.

82.     E-filing was designed to make the filing process more efficient and, naturally, the inner workings of the court would become more transparent.  E-filing should not take transparency and efficiency backwards.

## COUNT ONE

**Violations of Amendments 1 and 14 of the U.S. Constitution, and 42 U.S.C. § 1983.**

83.     Courthouse News incorporates herein the allegations of Paragraphs 1-82 above.

84.     Courthouse News has a qualified First Amendment right of access to new, non-confidential, civil complaints because such filings have historically been open to the press and public, and access to such complaints plays a significant role in ensuring that the public is aware that a civil dispute has arisen and the state power has been invoked.

85.     The presumption of access to new complaints arises when they are received by the Defendant.

86.     Defendant's no-access-before-process policy withholds new complaints until after processing is complete, thereby restricting access after the right of access has already attached. Thus, Defendant's policy restricts Courthouse News' access to new complaints in violation of its First Amendment right of access.

87.     Defendant must show "that denial [of access] is necessitated by a compelling governmental interest, and is narrowly tailored to serve that interest." *Detroit Free Press*, 303 F.3d at 705 (quoting *Globe Newspaper*, 457 U.S. at 607, 102 S. Ct. at 2620, 73 L. Ed. 2d 248).

88.     Defendant cannot satisfy this level of constitutional scrutiny.  There exists no compelling reason to justify delaying on-receipt access to new complaints, as federal and state courts throughout the country do not impose such delays on access, and Defendant is capable of providing on-receipt access to newly e-filed complaints.

89.     Courthouse News has no adequate and speedy remedy at law to prevent or redress Defendant's unconstitutional actions, and will continue to suffer irreparable harm as a result of Defendant's violation of its First Amendment rights.   Courthouse News is therefore entitled to a permanent injunction, and declaratory judgment, to prevent further deprivation of its constitutional rights and, consequently, the rights of its subscribers.

## PRAYER FOR RELIEF

WHEREFORE, Courthouse News prays for judgment against Defendant as follows:

A.      A declaration that Courthouse News has a qualified First Amendment right of access to new, electronically submitted, non-confidential civil complaints;

B.      A declaration that Rule 205.4(f)(1) is unconstitutional on its face under the First and Fourteenth Amendments to the United States Constitution;

C.      A declaration that Defendant's practice of withholding access to new, electronically submitted, non-confidential civil complaints until after processing – or "clerk review" and "acceptance," as referred to by Defendant – violates the First and Fourteenth Amendments to the United States Constitution;

D.      A preliminary and permanent injunction restraining the enforcement of Rule 205.04(f)(1), and Defendant's practice of withholding access to new, electronically submitted, non-confidential civil complaints until after processing;

E.      An award of costs and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988; and

F.      All other relief the Court deems just and proper.

Dated: August  15 , 2023                    Respectfully submitted,

METZ LEWIS BRODMAN MUST O'KEEFE LLC

Brian T. Must, Esquire
PA I.D. No.:  49657
535 Smithfield Street, Suite 800
Pittsburgh, PA  15222
Telephone:  (412) 918-1100
Fax:  (412) 918-1199
Email:  bmust@metzlewis.com

Attorneys for Plaintiff
Courthouse News Service