IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

COURTHOUSE NEWS SERVICE,

      Plaintiff,

2:21-cv-618

v.

MICHAEL MCGEEVER, in his official
capacity as Clerk of the Allegheny County
Court of Common Pleas[1],

      Defendant.

### DEFENDANT'S BRIEF IN SUPPORT OF MOTION TO DISMISS

Pursuant to FED.R.CIV.P. 12(b)(1) and 12(b)(6), Defendant Michael McGeever, files this BRIEF IN SUPPORT OF MOTION TO DISMISS.

### I. FACTS

Plaintiff Courthouse News Service ("CNS"), a nationwide news service which among other things publishes reports for its subscribers on non-confidential civil complaints, filed this action against Michael McGeever, Director of the Allegheny County Department of Court Records in his official capacity. (Am. Compl. ECF No. 4.)  CNS brings suit challenging a policy of withholding access to newly electronically received non-confidential civil complaints until after clerk processing is completed and the document is accepted for filing.  (ECF No. 4 ¶10, 84.)  Only those well-pled facts material to the pending motion will be set forth here and will be accepted as true by Defendant for the limited purposes of this pending Motion.

---

[1] Michael McGeever in his official capacity as Director of the Allegheny County Department of Court Records misidentified as Clerk of the Allegheny County Court of Common Pleas

1

CNS is seeking declaratory and injunctive relief under 42 U.S.C. § 1983. (ECF No. 4.) The Amended Complaint asserts §1983 claims against Defendant Michael McGeever under the First and Fourteenth Amendments. (ECF No. 4.) More specifically, CNS alleges that Defendant's "no-access-before-process" policy restricts CNS's access to new complaints in violation of its First Amendment right of access. (ECF No. 4 ¶86.)

Allegheny County Court of Common Pleas ("ACCCP") has an electronic-filing program. (ECF No. 4 ¶ 39.) Newly submitted electronic civil complaints are not made publicly available until after Department of Court Records staff members have completed clerical tasks involved with processing and accepting such complaints. (ECF No. 47.) CNS alleges that as a result, CNS consistently experiences access "blackouts" at ACCCP which results in newly filed civil actions not being publicly available for "one to three days." (ECF No. 47.)

CNS also challenges the constitutionality of Allegheny County Court of Common Pleas local rule of court 205.4(f)(1). (ECF No. 4.) Allegheny County Court of Common Pleas local rule of court 205.4(f)(1) is a rule promulgated in compliance with Pa.R.Civ.P. 239(a), 205.4(f)(1) which requires a local rule providing for a filing status message to the filing party. The local rule in pertinent part states:

> When a legal paper has been successfully transmitted electronically, the DCR's electronic filing website shall generate a printable acknowledgement page and shall transmit to the filer an initial email confirming the electronic receipt of the legal paper and the date and time thereof. Subsequently, after the DCR has processed the electronic filing, the DCR shall transmit, to the filer, an email stating the date and time of acceptance of the filing or stating that the filing has not been accepted and the reasons for non-acceptance. A legal paper will not be considered filed if the DCR responds to the filing by notifying the filer that the filer has not (i) maintained with the DCR sufficient funds to pay the fees and costs of the filing or (ii) authorized payment by credit or debit card of such fees and costs.

Alle. Cnty. Pa. 205.4(f)(1). The Allegheny County Court of Common Pleas Local Rules of Court are not set by Defendant Michael McGeever or the Allegheny County Department of Court Records. They are voted on and adopted by the Board of Judges. *See* 201 Pa. Code Rule 103.

The Case Records Public Access Policy of the Unified Judicial System of Pennsylvania ("Public Access Policy") governs access by the public to case records. 204 Pa. Code § 213.81 2(A). "Case Records" are defined by the policy as:

> (1) documents for any case filed with, **accepted and** maintained by a court or custodian; (2) dockets, indices, and documents (such as orders, opinions, judgments, decrees) for any case created and maintained by a court or custodian. This term does not include notes, memoranda, correspondence, drafts, worksheets, and work product of judges and court personnel. Unless otherwise provided in this policy, this definition applies equally to case records maintained in paper and **electronic** formats.

204 Pa. Code § 213.81 1(B). The Public Access Policy further provides that courts are not required to provide remote access to case records and that facilitating access by the public shall not substantially impede the orderly conduct of court business. 204 Pa. Code § 213.81 2(C), 2(D).

## II. STANDARD OF REVIEW

For a complaint to withstand a motion to dismiss brought pursuant to FED. R. CIV. P. 12(b)(6), it must provide sufficient facts that, if presumed to be true, support "a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 673 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). For a claim to qualify as "plausible," the alleged facts must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. The Third Circuit Court of Appeals has elaborated on the

3

pleading standard set forth in *Iqbal,* providing the following test for determining the sustainability of complaints challenged under Rule 12(b)(6):

> [W]hen presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "*show*" such an entitlement with its facts.

*Fowler v. UPMC Shadyside,* 578 F.3d 203, 210-211 (3d Cir. 2009) (*emphasis added*) (*internal citations to Iqbal omitted*). Only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal,* 556 U.S. at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]—that the pleader is entitled to relief." *Iqbal,* 556 U.S. at 679, 129 S.Ct. 1937 (internal citations and quotation marks omitted). This "plausibility" determination will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

### III. ARGUMENT

1.  **Abstention - Federalism, Comity, and Equity**

CNS has filed suit demanding instantaneous access to electronically submitted non-confidential civil complaints at the moment of their electronic submission, before Department of Court Records personnel have the ability to undertake administrative processing to ensure complaints are properly filed and paid for before being accepted and

released to the public. CNS, in turn, is asking this Court to hold Allegheny County Court of Common Pleas to a standard that is not followed by the Supreme Court of the United States. The U.S. Supreme Court does not allow for instantaneous access to case-initiating documents.

> Certiorari petitions and other case-initiating documents (e.g., jurisdictional statements, petitions for extraordinary writs, and applications not connected to existing cases) will be available on the docket only once the Clerk's Office has reviewed the paper document and accepted it for filing. If a filing is mailed to the Court, it may take several days from mailing for the filing to be reviewed, docketed, and posted.[2]

[Supreme Court of the United States Guidelines for Submission of Documents to The Supreme Court's Electronic Filing System ¶10(a).](#) CNS's claims are brought forth without regard to the duty Defendant McGeever has to protect confidential information from being unnecessarily released to the public, or to ensure that complaints are properly filed and paid for before the court exercises its jurisdiction over the matter.

CNS has now engaged the federal courts on an effort to compel a state court to impose a new system for processing and providing public access to cases without consideration to the cost, technical aspects of the e-filing system, or the effect it would have on the ability of courts to regulate their own dockets. CNS's claims put the federal courts in direct conflict with Pennsylvania courts before Pennsylvania courts have had the opportunity to address them.

---

[2] Supreme Court of the United States Guidelines for Submission of Documents to The Supreme Court's Electronic Filing System ¶10(a) ;
https://www.supremecourt.gov/filingandrules/ElectronicFilingGuidelines.pdf;
https://www.supremecourt.gov/filingandrules/faq_electronicfiling.aspx. Updated January 1, 2023.

Furthermore, the relief CNS is seeking would put this Court in a supervisory role over the Allegheny County Court of Common Pleas and potentially the entirety of Pennsylvania's Judicial System. This meddling into the administrative and internal processes of Pennsylvania Courts is the circumstance contemplated by the *Younger* abstention doctrine and its progeny, as outlined in Seventh Circuit decision addressing the very same issue in a matter filed by CNS in *Courthouse News Service v. Brown*, 908 F.3d 1063 (7th Cir. 2018). Beginning with an analysis of the Supreme Court's seminal abstention case of *Younger v. Harris*, the Seventh Circuit chose to refrain from exercising federal constitutional claims that seek to interfere with or interrupt ongoing state proceedings. *Id*.; *see also Younger v. Harris,* 401 U.S. 37 (1971). This doctrine was expanded by *O'Shea v. Littleton*, 414 U.S. 488, 500 (1974) ("Apparently the order would contemplate interruption of state proceedings to adjudicate assertions of noncompliance by petitioners. This seems to us nothing less than an ongoing federal audit of state criminal proceedings which would indirectly accomplish the kind of interference that *Younger v. Harris*, supra, and related cases sought to prevent.") *and Rizzo v. Goode*, 423 U.S. 362, 378-9 (1976) ("When the frame of reference moves from a unitary court system, governed by the principles just stated, to a system of federal courts representing the Nation, subsisting side by side with 50 state judicial, legislative, and executive branches, appropriate consideration must be given to principles of federalism in determining the availability and scope of equitable relief."). Combined with the general principles of federalism, equity, and comity, the Seventh Circuit used these principles to determine that abstention was appropriate. *Courthouse News Service*, 908 F.3d at 1073.

This action challenges the policy and procedures of Allegheny County Department of Court Records stemming from local rules of court and Unified Judicial System of

Pennsylvania regulations. Plaintiff alleges that Allegheny County "withholds" access to new complaints, misinterpreting what Pennsylvania regulations constitute as a "case record" available for public view. Every court has supervisory power over its own records and files." *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978). Federal courts should abstain where, as here, a plaintiff requests injunctive relief that would intrude on sensitive state activities such as the administration of its judicial system. State courts have a significant interest in running their own clerks' offices and setting their own filing procedures. *Courthouse News Service*, 908 F.3d at 1071. When these procedures are challenged as they have been here, the state courts should be given the first opportunity to determine precisely what level of press access is required, appropriate, and feasible in a state court. *Id.* The abstention doctrine recognizes that "the State's interests are paramount and that a dispute would best be adjudicated in a state forum." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 728 (1996).

As explained more fully below, CNS is advocating for an access rule that impairs trial courts' right and interest to inspect, secure, and manage documents prior to being disseminated to the public. CNS's insistence upon a constitutional requirement that all trial courts provide instantaneous public access to civil complaints the moment they are submitted disregards the rights and expectations of litigants, as well as the traditional discretion granted to court clerks to regulate the manner and timing of public inspection of court records. Understanding abstention is the exception, not the rule, Defendant does not invoke this doctrine lightly. However, this Court is in position to allow Pennsylvania to address a state issue and should exercise its right to abstain in order to preserve the principles of comity, equity, and federalism.

7

**2. Declaratory and Injunctive Relief Not Proper as to Rule 205.4(f)(1)**

CNS is seeking declaration that Alle. Cnty. Pa. 205.4(f)(1) is unconstitutional on its face and a permanent injunction restraining the enforcement of Alle. Cnty. Pa. 205.4(f)(1). CNS asserts that Defendant's "no-access-before-process" policy is reflected in Rule 205.4(f)(1) of the Local Rules of the Court of Common Pleas of Allegheny County. (ECF No. 4 ¶11.) Contrary to CNS's assertion, the text of Rule 205.4(f)(1) only provides the procedure for issuing a filing status message to a filing party as required by Pa.R.Civ.P. 239(a) and Pa.R.Civ.P. 205.4(f)(1). The Rule does not state anywhere the timing at which a filing will be made accessible to the public. Accordingly, CNS's request for injunctive and declaratory relief pertaining to Alle. Cnty. Pa. 205.4(f)(1) must be dismissed with prejudice.

**3. No First Amendment Right of Access Violation**

Though the doctrine of public access was first identified by the Supreme Court in the context of criminal trials, [*see Nixon v. Warner Communications*, 435 US 589, 598 (1978) and *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 581 (1980) (plurality opinion)], the Third Circuit extended the doctrine to civil proceedings and judicial records in *Publicker Industries, Inc. v. Cohen*, 733 F.2d 1059, 1071 (3d Cir. 1984). The public and the press have a First Amendment right of access to civil trials. *Publicker Indus.*, 733 F.2d at 1070. Although the constitutional right of access is "not absolute, … as a First Amendment right it is to be accorded the due process protection that other fundamental rights enjoy." *Id.*

A two-pronged test is used to assess whether the right of access attaches to a record: (1) the experience prong asks "whether the place and process have historically been open to the press"; and (2) the logic prong evaluates "whether public access plays a significant positive role in the functioning of the particular process in question." *N. Jersey Media Grp. Inc.*

8

*v. United States,* 836 F.3d 421, 429 (3d Cir. 2016) (*quoting Press–Enterprise Co. v. Superior Court of Cal. for Riverside Cty.,* 478 U.S. 1, 8, 106 S.Ct. 2735, 92 L.Ed.2d 1 (1986). If both prongs "are satisfied, a qualified First Amendment right of public access attaches." *Id.*; *see also PG Publ'g Co. v. Aichele,* 705 F.3d 91, 104 (3d Cir. 2013) (explaining that the experience and logic test "balances the interests of the People in observing and monitoring the functions of their government against the government's interest and/or long-standing historical practice of keeping certain information from public scrutiny"). CNS bears the burden of proof as to both prongs of the *Press Enterprise* test. *New Jersey Media Group, Inc. v. Ashcroft,* 308 F.3d 198, 209 (3rd Cir. 2009). To satisfy this burden, CNS must do more than claim that the First Amendment grants a right of access to complaints *generally*. Instead, CNS must show that the alleged restrictions Defendant *actually* imposes upon access to new civil complaints are unconstitutional. *Leigh v. Salazar,* 677 F.3d 892, 900-01 (9th Cir. 2012). Or, as the Fifth Circuit held in a case involving similar claims, because there is no dispute that the Circuit Clerk makes civil complaints available ultimately, the question presented is "a temporal one, that is, how quickly must the charging instruments be made available?" *Sullo & Bobbitt, P.L.L.C. v. Milner,* 765 F.3d 388, 392 n.3 (5th Cir. 2014).

> i. *A Pre-Processed Civil Complaint Submission is Not a Judicial Record Subject to First Amendment Right of Access*
>
> a. Submitted, but not "filed" documents have not been historically open to the press.

There is no dispute in this case that non-confidential civil complaints that have been electronically processed, accepted, and therefore "filed" are made available to the public for viewing instantaneously. What CNS is requesting here is instantaneous access to

9

electronically submitted complaints that have not yet been officially filed with the Court. A submitted complaint has not yet been officially filed with the Court and accepted as a "case record" until the Court has reviewed and accepted it as a Court filing. *See* 204 Pa. Code § 213.81 1(B). Historically, whether or not a document or record is subject to the common law right of access turns on whether that item is considered to be a "judicial record." *Pansy v. Borough of Stroudsburg,* 23 F.3d 772, 781 (3d Cir 1994). The status of a document as a "judicial record," in turn, depends on whether a document has been filed with the court, or otherwise somehow incorporated or integrated into a district court's adjudicatory proceedings. *Id.* at 780–83.

Third Circuit precedent asserts that documents that are submitted, but not filed with the Court are not judicial records subject to access. See *Pansy v. Borough of Stroudsburg,* 23 F.3d 772, 781 (3d Cir 1994). (Holding that a settlement agreement not filed with the district court, but submitted to and reviewed by that court, was not a judicial record subject to public access). Furthermore, there is a historic and long-standing tradition of granting court clerks discretion to regulate the manner and time of public access to court records. The Supreme Court has recognized that "to the extent that courthouse records could serve as a source of public information, access to that source customarily is subject to the control of the trial court." *Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 33 n.19 (1984). *See also Bell v. Commonwealth Title Ins. & Trust Co.,* 189 U.S. 131, 133 (1903) (a court clerk may "make such reasonable regulations as will secure to him and his assistants full use of all the books and records of this office … and also will guard against any tampering with or injury to those books and records, and at the same time give to the plaintiff and others access to the indices"); *Nixon v. Warner Communications,* 435 US 589, 598 (1978) ("Every court has

supervisory power over its own records and files...").  Accordingly, an electronically submitted complaint that has not yet been processed and accepted as filed by the Court is not a judicial record subject to right of access.   As such, CNS's First Amendment Right of Access claim should be dismissed with prejudice.

>  ii.  Alleged "Blackout" Period does not Amount to Constitutional Violation

Even if this Honorable Court were to rule that First Amendment right of access applies to electronically submitted, pre-processed, non-confidential civil complaint, CNS has not pled a constitutional violation.

Ordinarily, strict scrutiny is applied to examine an asserted infringement of a First Amendment right of access.  See *Globe Newspaper Co.*, 457 U.S. at 606, 102 S.Ct. 2613. However, the Supreme Court has instructed that "limitations on the right of access that resemble 'time, place, and manner' restrictions on protected speech [will] not be subjected to such strict scrutiny." *Id.* at 607 n.17. Here, the practice complained of by CNS is a time, place, and manner restriction.  The "no-access-before-process-policy" is content neutral and only affects the timing of access to newly submitted electronic complaints.  Accordingly, relaxed scrutiny should be applied. See *Courthouse News Service v. Planet*, 947 F.3d 595 (9th Cir. 2020) (***Planet III***).  In the context of this case, this requires that delays in access be "content-neutral, narrowly tailored and necessary to preserve the court's important interest in the fair and orderly administration of justice." *Id.* at 585.

As stated above the U.S. Supreme Court has historically recognized that access to courthouse records is subject to the control of the trial court. Any delay to access caused by clerk review of submitted complaints are necessary to preserve Allegheny County Court of

11

Common Pleas interest in fair and orderly administration of justice.  Defendant Michael McGeever has an important interest in reviewing a submitted pleading for compliance with privacy and Pennsylvania filing rules before accepting the pleading for filing and disclosing its contents to the public.  CNS avers that because the responsibility for including accurate information in filings, or omitting confidential information, rests solely with the filer, Defendant has no interest in processing complaints before making them public.  (ECF No. 4 ¶71.) This is not the case. A clerk or custodian is not prohibited from reviewing or redacting documents containing confidential information.  204 Pa. Code §213.81 (7).  The processing of submitted complaints prior to disclosing their contents to the public protects the privacy interests of pro se litigants, plaintiffs, defendants, third parties, and minors.

> Even in this era of electronic filing systems, instantaneous public access to court filings, especially complaints, could impair the orderly filing and processing of cases with which clerk's offices are charged. After all, litigants are not uploading their complaints to the internet; they are filing them with a court, making them subject to judicial administration. The First Amendment does not require courts, public entities with limited resources, to set aside their judicial operational needs to satisfy the immediate demands of the press.

*Courthouse News Service v. Planet*, 947 F.3d 581 (9th Cir. 2020) (***Planet III***)

Here, CNS has not pled a specific instance in which it was harmed by an electronic complaint not being made timely available because of the "no-access-before-process" policy. CNS only alleges that it experiences access "blackouts" at ACCCP that result in newly submitted civil complaints not being made publicly available for one to three days. Defendant notes the absence of the term "business days" or "court days" and therefore understands this as meaning the "blackouts" are weekends and the occasional court holiday. E-filing is open and available 24-7.  The Department is not staffed 24-7.  Naturally, if a party

submits a new complaint after-hours on a Friday, it will not be processed and accepted for filing until Monday.

CNS has filed lawsuits throughout the Country demanding instantaneous, pre-processing, access to civil complaints. Defendant has thus far not been able to identify a court addressing this First Amendment issue that has required complaints to be made available instantaneously or during times when the courts are not open and staffed. The Fourth Circuit in *Courthouse News Service v. Schaffer*, 2 F.4th 318, 328 (4th Cir. 2021) held that "contemporaneous" in this context means "the same day on which the complaint is filed, insofar as is practicable;" and, when not practicable, on the next court date. "The next court date" is defined as a time prior to the curtailment of access on the first day following the paper's filing when the Clerk's Office is open for business. *Id.*

> This flexible standard does not require perfect or instantaneous access. Rather, it provides courts with some leeway where same-day access would be impracticable, and fully exempts inconsequential delays and those caused by extraordinary circumstances. This flexibility accords with precedent in recognizing that the Constitution does not require the impossible.

*Id.* The Tenth Circuit in *Courthouse News Serv. v. New Mexico Admin. Off. of Cts.*, 53 F.4th 1245 (10th Cir. 2022) reversed the district court's preliminary injunction order and held that the district court's five-business-hour rule, without any exceptions, pays no regard to the New Mexico Courts' administrative limitations in extraordinary circumstances. In *Planet III*, the Ninth Circuit held that the state court's policy of scanning complaints and making them available on public computer terminals in the clerk's office survived constitutional scrutiny, even though the policy did not result in perfect, same-day access. 947 F.3d at 598–600. As such, the constitution does not require ACCCP to make available documents that have been

13

submitted at times when the Department of Court Records is closed. The constitution also does not require perfect or instantaneous access.

For the foregoing reasons, CNS has not pled a constitutional violation. As such, the Amended Complaint must be dismissed with prejudice.

## IV. CONCLUSION

Defendant respectfully request that this Honorable Court grant the Motion to Dismiss and dismiss the Amended Complaint in its entirety with prejudice.

Respectfully submitted,

*/s/ Frances Marie Liebenguth*
Frances Marie Liebenguth
Assistant County Solicitor
Pa. I.D. #314845

ALLEGHENY COUNTY LAW DEPARTMENT
300 Fort Pitt Commons Building
445 Fort Pitt Boulevard
Pittsburgh, PA 15219
(412) 350-1108

frances.liebenguth@alleghenycounty.us