**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| COURTHOUSE NEWS SERVICE, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No.  2:23-cv-01459 |
| | ) | |
| v. | ) | Judge Christy Criswell Wiegand |
| | ) | Magistrate Judge Kezia O. L. Taylor |
| MICHAEL MCGEEVER, | ) | |
| | ) | |
| Defendant. | ) | ECF No. 16 |
| | ) | |

**REPORT AND RECOMMENDATION**

**I.      RECOMMENDATION**

It is respectfully recommended that Defendant McGeever's Motion to Dismiss Plaintiff's Amended Complaint, ECF No. 16, be denied.

**II.      REPORT**

**A.      Procedural Background**

Plaintiff Courthouse News Service ("Plaintiff") commenced this action on August 15, 2023, and later filed an Amended Complaint seeking declaratory and injunctive relief.  ECF Nos. 1 and 4.  In the operative pleading, Plaintiff brings claims under the First and Fourteenth Amendments to the United States Constitution against Defendant Michael McGeever, Allegheny County Court of Common Pleas Clerk of Courts[1] ("Defendant"), for implementing processes and procedures related to electronic filings of new, non-confidential complaints, that restrict "timely, on-receipt" access to these filings.  ECF No. 4 ¶ 4.  Plaintiff also challenges the

---

[1] In his Motion to Dismiss, Defendant identifies his occupation as Director of the Allegheny County Department of Court Records, and not as Clerk of the Allegheny County Court of Common Pleas, as represented by Plaintiff in its Amended Complaint.  ECF Nos. 4, 16.  For purposes of the Court's discussion and ultimate recommendation, this distinction is of no consequence.

1

constitutionality of Allegheny County Court of Common Pleas Local Rule 205.4(f)(1) which reflects Defendant's processes and procedures relative to electronic filings. *See* ECF No. 4. Defendant sought and was granted an extension of time to respond. ECF Nos. 8-9. On October 24, 2023, Defendant filed a 12(b)(6) motion, with a brief in support. ECF Nos. 16-17. On November 14, 2023, Plaintiff filed a timely response in opposition. ECF No. 19. Defendant's motion is now ripe for consideration.

  **B.**  <u>**Factual Background**</u>

  Plaintiff is a nationwide news service covering both State and Federal trial level and appellate level courts in all fifty states. ECF No. 4 ¶ 18. Plaintiff releases news publications pertaining to "significant new civil complaints." *Id*. ¶ 25. In an effort to provide its over 2300 subscribers with up-to-date information in its daily publications, Plaintiff's "reporters review non-confidential civil complaints filed with the court that day." *Id*. ¶¶ 29, 33. Plaintiff asserts that, traditionally, the press had "timely access to new complaints on receipt, which was right after the complaints crossed the intake counter in the clerk's office and were received." *Id*. ¶ 35. When first introduced in 2000, electronic filing was voluntary in Allegheny County, but by the time Plaintiff began covering relevant filings in Allegheny County in 2005, "about 25% of new civil filings were submitted electronically." *Id*. ¶ 39. At that time, "[b]oth e-filed documents and paper-filed documents were assigned a case number and entered into a basic intake log that was available for viewing on the court's website upon receipt. E-filed complaints were then printed out and put into the same stream as paper filings, where they were docketed, put into folders and placed on a shelf." *Id*. ¶ 40. Plaintiff's reporters had prothonotary-sanctioned access to the electronically filed complaints by requesting the same "from the paper desk, which would track the complaints down at whatever stage of the docketing process they were in and provide them to the reporter for viewing." *Id*. ¶ 41.

Plaintiff asserts that as electronic filings became more widely used, "e-filed documents stopped getting printed out and paper-filed complaints had to be scanned into electronic form, so the prothonotary's office stopped fulfilling the [Plaintiff's] reporter's request for paper copies of individual complaints, and the press was pushed to the end of the line, behind processing." *Id*. ¶ 43. Plaintiff contends that "Defendant has implemented a "no-access-before-process" policy that delays access to newly e-filed, non-confidential complaints.  This policy is reflected in Rule 205.4(f)(1) of the Local Rules of the Civil and Family Division of the Court of Common Pleas of Allegheny County, Pennsylvania." *Id*. ¶ 11.

According to the electronic filing system utilized by Defendant, Plaintiff asserts that "a document is submitted when the filer clicks the 'Submit Payment' button, which appears immediately after the 'Filing Review' page." *Id*. ¶ 45.  Plaintiff contends that "roughly three quarters of the new civil actions are withheld for one to three days," based on "Defendant's no-access-before-process policy [that] requires that all new complaints (and all other e-filings) be withheld until after Defendant's staff members have completed their clerical tasks involved with processing such complaints." *Id*. ¶ 47.  According to Plaintiff, the delay causes "the news they contain [to] become[s] 'old news.'"  *Id*.  Plaintiff contends that by precluding on-receipt access to non-confidential complaints, "Defendant is sealing those documents from public viewing without prior court order," *Id*. ¶ 49, which Plaintiff asserts is required for such non-disclosure to occur.  *Id*.  Plaintiff argues that since Defendant already has in place procedures for filing documents under seal, *Id*. ¶¶ 50 and 54, "Defendant's no-access-before-process policy unjustifiably restricts Courthouse News' First Amendment right of access to new non-confidential complaints in such a way that it cannot survive constitutional scrutiny." *Id*. ¶ 54.  As a solution, Plaintiff offers the following:

> Defendant operates its own e-filing system, so it can configure
> the software to allow on-receipt access to new filings through

> either a "press queue," where newly filed complaints are available to the press in read-only format prior to case assignment or acceptance, or an "autoaccept" system, which automatically assigns a permanent case number to new complaints and automatically places them into the docket, or case management system, where they can be viewed by the public on receipt.

*Id.* ¶ 76.

### C. <u>Legal Standard</u>

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *See Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a Rule 12(b)(6) motion to dismiss, the court must accept as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff. *See U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002). The "court[] generally consider[s] only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim" when considering the motion to dismiss. *Lum v. Bank of Am.*, 361 F.3d 217, 222 n.3 (3d Cir. 2004) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir.1997)).

In making its determination under Rule 12(b)(6), the court is not opining on whether the plaintiff is likely to prevail on the merits; rather, the plaintiff must only present factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004)). *See also Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Furthermore, a complaint should only be dismissed pursuant to Rule 12(b)(6) if it fails to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570 (rejecting the traditional Rule 12(b)(6) standard established in *Conley v. Gibson*, 355 U.S. 41, 78 (1957)).

While a complaint does not need detailed factual allegations to survive a motion to dismiss, a complaint must provide more than labels and conclusions. *See Twombly*, 550 U.S. at 555. A "formulaic recitation of the elements of a cause of action will not do." *Id*. (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Moreover, a court need not accept inferences drawn by a plaintiff if they are unsupported by the facts as explained in the complaint. *See California Pub. Employee Ret. Sys. v. The Chubb Corp.*, 394 F.3d 126, 143 (3d Cir. 2004) (citing *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)). Nor must the court accept legal conclusions disguised as factual allegations. *See Twombly*, 550 U.S. at 555; *McTernan v. City of York, Pennsylvania*, 577 F.3d 521, 531 (3d Cir. 2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). Put another way, in assessing a motion to dismiss, while the Court must view the factual allegations contained in the pleading at issue as true, the Court is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations." *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007). Expounding on the *Twombly* and *Iqbal* line of cases, the Third Circuit has articulated the following three-step approach:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Burch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)). This determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

D.   **Discussion**

1.   **Abstention**

Defendant argues that this Court should abstain from exercising jurisdiction over this matter based on "principles of comity, equity, and federalism." ECF No. 17 at 7. Relying on *Courthouse News Serv. v. Brown*, 908 F.3d 1063, 1067 (7th Cir. 2018), where the Court reversed the district court's issuance of a preliminary injunction that prohibited the defendant from withholding complaints until after processing, Defendant, here, believes that entertaining this action and ruling in Plaintiff's favor "would put this Court in a supervisory role over the Allegheny County Court of Common Pleas and potentially the entirety of Pennsylvania's Judicial System." ECF No. 17 at 7. In response, Plaintiff contends that *Brown* is an "outlier," and since this case does not involve a pending state action – a necessary element for considering the *Younger* abstention doctrine – abstention does not apply. *See* ECF No. 19 at 4-5. The undersigned agrees.

The *Younger* doctrine, borne out of a United States Supreme Court case that "concluded that the judgment of the District Court, enjoining appellant Younger from prosecuting under [certain] California statutes, must be reversed as a violation of the national policy forbidding federal courts to stay or enjoin pending state court proceedings except under special circumstances[,]" *Younger*, 401 U.S. at 41, is inapplicable to this case. As Judge Marston recently explained,

> *Younger* abstention is an exception to the general rule that a "federal court's obligation to hear and decide a case is virtually unflagging." *PDX N. Inc. v. Comm'r N.J. Dep't of Labor & Workforce Develop.*, 978 F. 3d 871, 882 (3d Cir. 2020) (quoting *Sprint Commc'ns., Inc. v. Jacobs*, 571 U.S. 69, 77, 134 S.Ct. 584, 187 L.Ed.2d 505 (2013)). The doctrine serves the "dual-purpose" of (1) promoting comity, and (2) restraining equity jurisdiction from operating "when state courts provide adequate legal remedies for constitutional claims and there is no risk of irreparable harm." *Id.*

*Doe v. Schorn*, No. CV 23-3252-KSM, 2024 WL 128210, at *13 (E.D. Pa. Jan. 10, 2024).  In *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 78 (2013), the Supreme Court reiterated the limited scope of the *Younger* doctrine, explaining that it applies in "exceptional circumstances." These "exceptional circumstances" are limited to the following proceedings: "First, *Younger* precluded federal intrusion into ongoing state criminal prosecutions.  Second, certain "civil enforcement proceedings" warranted abstention.  Finally, federal courts refrained from interfering with pending "civil proceedings involving certain orders ... uniquely in furtherance of the state courts' ability to perform their judicial functions." *Sprint*, 571 U.S. at 78 (internal citations omitted).  The case at bar does not fall into any of those categories because there is no pending state proceeding with which the instant action would interfere.

For these reasons, it is respectfully recommended that the Court deny Defendant's Motion to Dismiss insofar as it seeks abstention under *Younger*.

**2.   First Amendment Right of Access**

Plaintiff brings a First Amendment claim, arguing that Defendant's "no-access-before-process" policy fails under the applicable strict scrutiny test.  ECF No. 4 ¶¶ 86-88.  In response, Defendant contends that until a complaint is filed, at which time it becomes a judicial record, the right of access does not attach.  ECF No. 17 §(3)(i)(a).  Defendant argues, "an electronically submitted complaint that has not yet been processed and accepted as filed by the Court is not a judicial record subject to right of access."  ECF No. 17 at 11.  Finally, relying on *Courthouse News Service v. Planet*, 947 F.3d 595 (9th Cir. 2020) ("Planet III"), Defendant asserts that even if a right of access attaches to a complaint when it is filed, "the 'no-access-before-process-policy' is content neutral and only affects the timing of access to newly submitted electronic complaints. Accordingly, relaxed scrutiny should be applied."  ECF No. 17 at 11.  Plaintiff does not appear to

refute this, and in fact, agrees that "Defendant generally states the correct test *Planet III* applies." ECF No. 19 at 12.  The latter point is well-taken.

The Parties agree that the applicable test for a restriction of the right to access – commonly referred to as the "Experience and Logic Test" – is two-fold: (1) the experience prong asks, "whether the place and process have historically been open to the press and general public," and the logic prong asks, "whether public access plays a significant positive role in the functioning of the particular process in question.'" *North Jersey Media Group*, 836 F.3d 421, 429 (3d Cir. 2016) (quoting *Press-Enter. Co. v. Super. Ct. of California for Riverside Cnty.*, 478 U.S. 1, 8 (1986)).  If both prongs are satisfied, "a qualified First Amendment right of public access attaches." *Press-Enter. Co.*, 478 U.S. at 2.  Here, Plaintiff alleges that "civil complaints … have historically been open to the press and public, and access to such complaints plays a significant role in ensuring that the public is aware that a civil dispute has arisen and the state power has been invoked."  ECF No. 4 at ¶ 84.  Accepting Plaintiff's well-pled factual allegations in the complaint, as the court must at this stage of the proceedings, a qualified First Amendment right of access exists in this instance.

Having found that a right of access exists to the complaints at issue, the next step is to determine whether "the restrictions on access satisfy constitutional scrutiny." *Press-Enter. Co.*, 478 U.S. at 9.  Plaintiff initially asks that "strict scrutiny" apply to this case, and that Defendant be required to "show 'that denial [of access] is necessitated by a compelling governmental interest, and is narrowly tailored to serve that interest.' *Detroit Free Press*, 303 F.3d 681, 705 (quoting *Globe Newspaper*, 457 U.S. at 607, 102 S. Ct. at 2620, 73 L. Ed. 2d 248)."  ECF No. 4 at ¶ 87.  However, despite semantic disagreements, and in response to Defendant's Motion to Dismiss, the Parties both agree that a more "relaxed" level of scrutiny applies to limitations on the right of access that resemble 'time, place, and manner' restrictions. *See Planet III* 947 F.3d at 595.  With

8

this in mind, the question becomes whether Defendant's delay in making the complaints at issue available to the public – specifically to Plaintiff – is "narrowly tailored and necessary to preserve the court's important interest in the fair and orderly administration of justice." *Planet III*, 947 F.3d at 585. In support of its position that the delay associated with processing new complaints withstands constitutional scrutiny, Defendant cites to cases where the courts relied on evidence beyond the pleadings, a benefit that the undersigned does not have at this juncture. For instance, in *Courthouse News Service v. Shaffer*, 2 F.4th 318 (4th Cir. 2021), the district court conducted a bench trial, where evidence, including expert testimony, was presented relative to the Defendant-Clerk Office's delay in providing access to newly filed civil complaints. In *Courthouse News Serv. v. New Mexico Admin. Off. of Cts.*, 53 F.4th 1245, 1250 (10th Cir. 2022), the district court conducted a hearing on Plaintiff's motion for preliminary injunction, where evidence, for both sides, was presented to the tribunal. *Id*.

At this stage in the proceedings, it is premature to rule on a fact-intensive query that the applicable level of scrutiny presents. As such, it is respectfully recommended that Defendant's Motion to Dismiss Plaintiff's right of access claim be denied.

### 3. <u>Declaratory and Injunctive Relief</u>

Next, Defendant argues that neither injunctive nor declaratory relief is proper relative to Rule 205.4(f)(1), because its "text … only provides the procedure for issuing a filing status message to a filing party as required by Pa. R. Civ. P. 239(a) and Pa. R. Civ. P. 205.4(f)(1). The Rule does not state anywhere the timing at which a filing will be made accessible to the public." ECF No. 17 at 8. Plaintiff counters by arguing that declaratory and injunctive relief are both available in an action where, as here, "an allegedly unconstitutional action 'implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [a

9

local governing] body's officers.' <u>Monell</u>, 436 U.S. at 690."  ECF No. 19 at 9.

In *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658 (1978), the United States Supreme Court held that municipalities and other local governmental units are persons subject to liability under 42 U.S.C. § 1983.  In so ruling, however, the Court declared that municipal liability may not be premised on the mere fact that the governmental unit employed the offending official, that is, through application of the doctrine of *respondeat superior*.  Instead, the Court concluded that a governmental unit may be liable under § 1983 only when its policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.  *Monell*, 436 U.S. at 694.  The official policy requirement distinguishes acts of the municipality from acts of employees of the municipality, thereby limiting liability to action for which the municipality is actually responsible.  *Id.*

In finding municipal liability pursuant to § 1983, a plaintiff must identify the policy, custom or practice of the municipal defendant that results in the constitutional violation.  *Id.* at 690-91.  A municipal policy is made when a decision-maker issues an official proclamation or decision.  *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986), *quoted in, Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990).  A custom or practice, however, may consist of a course of conduct so permanent and widespread that it has the force of law.  *Andrews*, 895 F.2d at 1480.  To establish municipal liability based on a custom or practice, the plaintiff must show that the decision-maker had notice that a constitutional violation could occur, and that the decision-maker acted with deliberate indifference to this risk.  *Berg v. County of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000).  Finally, Plaintiff must show a causal connection between the custom or policy and the violation of the constitutional right.  *Bielevicz v. Dubinon*, 915 F.2d 845, 850-51 (3d Cir. 1990).  That is, a plaintiff must demonstrate an affirmative link or plausible nexus between the

custom or practice and the alleged constitutional deprivation.

Here, taking all of Plaintiff's allegations as true and affording Plaintiff every favorable inference as the Court must on a motion to dismiss, and having recommended that Plaintiff's First Amendment claim survive Defendant's Motion to Dismiss, it is respectfully recommended that Defendant's Motion to Dismiss Plaintiff's claims for declaratory and injunctive relief be denied.

## III.   **CONCLUSION**

For the above stated reasons, it is respectfully recommended that Defendant's Motion to Dismiss, ECF No. 16, be denied.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1), and Local Rule 72.D.2, the parties may file written objections within fourteen days of the date of this Report and Recommendation.  Any party opposing objections may respond to the objections within fourteen days in accordance with Local Civil Rule 72.D.2.  Failure to timely file objections will waive the right to appeal.  *Brightwell v. Lehman*, 637 F.3d 187, 193 n.7 (3d Cir. 2011).

Dated: May 23, 2024

s/Kezia O. L. Taylor
KEZIA O. L. TAYLOR
United States Magistrate Judge

cc:     The Honorable Judge Christy Criswell Wiegand
United States District Judge

All counsel of record via ECF